(33 Misc. Rep. 733.)

TWELFTH WARD BANK v. ROGERS.

(City Court of New York, General Term. January 4, 1901.)

NOTES—INDORSER'S LIABILITY—CONSIDERATION—COLLATERAL AGREEMENT.
> Defendant indorsed three notes for the accommodation of the maker under an arrangement that he should be liable only on one of them. The note of which the note sued on was a renewal, after indorsement to plaintiff, was not paid, and defendant indorsed the new note under an alleged agreement with the president of the indorsee bank that he was not to be liable thereon. There was no consideration for this promise of the bank. Defendant had received the proceeds of the note sued on, and with them had taken up one of the three notes at another bank on which he was not liable. *Held*, that defendant was liable on the note, and hence that a verdict for the plaintiff was properly directed.

Appeal from trial term.

Action by the Twelfth Ward Bank against James Rogers, impleaded. From a judgment in favor of defendant, and from an order denying a motion for a new trial, defendant appeals. Affirmed. For former opinion, see 61 N. Y. Supp. 496.

Argued before McCARTHY, CONLAN, and SCHUCHMAN, JJ.

Earley & Prendergast, for appellant.

Charles W. Dayton, for respondent.

CONLAN, J. The action is brought upon a promissory note made by one Woodward to the order of and indorsed by the defendant, Rogers, which was a renewal of a former note similarly signed and indorsed. The former note had been discounted, and was held by the Hamilton Bank; the note in suit was discounted and held by the plaintiff. A brief statement of the facts leading up to the transaction which resulted in the making of the note in suit is substantially as follows: Prior to 1892 one Woodward, Steers, Campbell, and the defendant, Rogers, were interested in the ownership of a piece of real estate in the city of New York, and required the sum of $5,000 to complete the building thereon, and it was arranged that this sum should be raised by three notes of $1,666.67 each, to be made by Woodward, one to each of the three, and indorsed by the other two in each instance, upon the further understanding that each of the three indorsers should be liable only upon the note made to his order. This agreement was carried out, and Woodward gave mortgages to each of the three indorsers for the amount of the note, plus a sum which was due from the former owner. Campbell had the notes discounted at his bank. Subsequently his bank refused to carry the notes any longer, and Campbell paid off his note, and refused to indorse the other two, which were taken by Rogers to the Hamilton Bank. Steers failed in 1893, and, as his indorsement was then worthless, renewals of the two notes bore the indorsement of Rogers only. The Hamilton Bank thereafter refused to carry both notes. It is said that the mortgage held by Steers has been assigned to the plaintiff bank, and Rogers, hearing of this, called on the president of the plaintiff, who was the brother of Steers, and explained the situation to him, and requested him to have at least one of the notes taken by the plaintiff. In a subsequent conversation between the plaintiff's president and the defendant the situation was discussed, and Woodward was sent for at Steers' request, and he (Woodward) shortly afterwards told Rogers that the bank would take the note. Rogers took to the bank a note for $1,666.67, dated October 3, 1895, made by Woodward, and indorsed by Rogers, and the bank discounted the same, and with the proceeds Rogers paid the Steers note held by the Hamilton Bank. This last note was renewed several times, but a renewal thereof was protested in October, 1896, and this brings the history of the transaction down to the time when the note in suit was given. Rogers informed Steers, the plaintiff's president, that he would not go on the note any more, and Steers suggested a meeting of all the parties, and one was held at the Harlem Club. Rogers again stated that he should not renew the note, and Woodward said he was anxious to have the note renewed, and make his account in the bank alive; and Steers said he did not see that by Rogers going on the note it would add to or decrease his liability; and the testimony of Rogers on this subject is that Steers said to him, "We will

take the same position, and hold you as my brother did;" and that Rogers replied, "Do you mean that?" and Steers answered: "Well, I want to show you that I am not what you think. I am all right." And the defendant says he himself gave no consideration for this promise of Steers. The new note was given, and several times renewed, and on the last renewal the note in suit went to protest.

Upon a former appeal the judgment, which was also upon a verdict directed by the court, was reversed, principally upon the ground that it did not appear that Rogers ever received the proceeds of the note in suit, which was discounted by the plaintiff. The evidence upon the last trial is conclusive upon the question, for he himself testifies that he received the proceeds of the note, and with them paid the Steers note in the Hamilton Bank. The note given in renewal of the note originally discounted by the plaintiff in no way changes the liability of the defendant, Rogers, nor releases him from his liability to the bank upon the discounted note, if, as is claimed by Rogers, the bank had security for the discounted note. Rogers, by paying the amount due to the bank, would be entitled to be subrogated to the bank in relation thereto, and the security pro tanto would become his, and he could thus escape responsibility therefrom; but whether or not there was any such security does not alter the situation as to Rogers' liability. If any new promise was made upon the giving of the renewal, there was no consideration for it, as Rogers himself testified. Steers could not thus bind the bank to whom the note belonged. It is not pretended that the transaction was one with Steers individually. He was acting for the bank, and the situation was as well known to Rogers as it was to any other person having any interest in the matter.

The learned counsel for the appellant urges the decision of this court on the first appeal as controlling in the present instance, and, while we see no reason to change our views upon the subject as the case was then presented to us, there is another element in the record before us which we think calls for a different ruling. Upon the former trial it was not in evidence that the defendant had been benefited by the discount of the note he presented to the plaintiff, and we did not think that he should be liable therefor; but it now appears that the proceeds were placed to his credit, and that he received the same to his own use, and with them took up one of the notes held by the Hamilton Bank. If he was not liable upon that note, he certainly was not called upon to pay it voluntarily; and his paying that note with the moneys obtained from the plaintiff, whether he was liable upon it or not, would in no sense change his liability to the plaintiff upon the note discounted by it for him; and whether or not he signed any of the renewal notes received from him or any other person by the bank, he could not discharge himself from the liability already incurred. So that, in any aspect of the case, the recovery upon the last trial was just, and upon the evidence which he himself presented we do not think there was any error committed by the trial justice in taking the case from the jury, and directing a verdict in favor of the plaintiff. We have given the case more than ordinary consideration. Our examination of the record and the briefs of counsel have

failed to convince us that we should interfere with the determination reached by the trial justice.

Judgment and order appealed from affirmed, with costs. All concur.